**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**Civil No. 00-625 (MJM)**

| | | |
|---|---|---|
| SCOTT ANDREW WITZKE,<br><br>Plaintiff,<br><br>vs.<br><br>J. EARL CUDD, UNITED STATES MAGISTRATE JUDGE, in his individual capacity for money damages and in his official capacity for declaratory relief,<br><br>Defendant. | ) | **OPINION and ORDER** |

On March 14, 2000, Plaintiff, Scott Andrew Witzke ("Witzke"), filed the above-entitled action seeking monetary and declaratory relief for damages allegedly incurred when Defendant, United States Magistrate Judge, J. Earl Cudd ("Cudd"), erroneously modified Plaintiff's supervised release conditions and ordered Plaintiff confined to a community correctional facility.[1] (Doc. no. 1). There are two motions currently pending before the Court. On October 16,

---

[1] This suit was brought pursuant to the authority set forth in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), which provides redress in federal court where a plaintiff "can demonstrate an injury consequent upon the violation by federal agents" of his constitutional rights. *Id.* at 397.



DEC 14 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD DEC 14 2000
DEPUTY CLERK

2000, Plaintiff moved for an Order of Partial Dismissal With Prejudice as to the official capacity claim for declaratory relief.[2] (Doc. no. 18). Defendant offers no objection, (doc. no. 23), and accordingly, Plaintiff's motion is granted.[3]

Also before the Court is Defendant's motion to dismiss the remaining claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[4] (Doc. no. 10). At issue is whether Defendant is protected by absolute judicial immunity for the alleged violations of Plaintiff's Fourth and Fifth Amendment rights. Because the Court concludes that Defendant was performing a judicial act when he modified Plaintiff's supervised release conditions, and was not acting in "the clear absence of all jurisdiction of

---

[2] Plaintiff filed this motion for partial dismissal on October 16, 2000, four months after Defendant filed his 12(b)(6) motion, and thus Plaintiff's motion is governed by Federal Rule of Civil Procedure 41(a)(2), which permits dismissal of a claim or action only "upon order of the court and upon such terms and conditions as the court deems proper."

[3] Under Rule 41(a)(2), "[u]nless otherwise specified in the order, a dismissal . . . is without prejudice." Plaintiff has specifically moved for dismissal *with prejudice*, and his accompanying supporting memorandum reiterates that request. (Doc. nos. 18 and 19). Therefore, in granting Plaintiff's motion, the Court, in accordance with Rule 41(a)(2), specifies that the partial dismissal in this case is granted "with prejudice."

[4] Because consideration of "matters outside the pleading" is unnecessary for resolution of this matter, the Court need not address Defendant's alternative motion for summary judgment. *See* Fed. R. Civ. P. 12(b)(6) (stating that court should treat 12(b)(6) motion as summary judgment motion if matters outside the pleading "are presented to and not excluded by the court").

the subject matter," Defendant is entitled to absolute immunity and the motion to dismiss shall be granted.

Motion to Dismiss Standard

In addressing a motion to dismiss for failure to state a claim upon which relief could be granted under Fed. R. Civ. P. 12(b)(6), a court must presume that the factual allegations in the complaint are true and accord all reasonable inferences from those facts to the plaintiff.[5] *See Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Midwestern Machinery v. Northwest Airlines, Inc.*, 167 F.3d 439, 441 (8th Cir. 1999); *Valiant-Bey v. Morris*, 829 F.2d 1441, 1443 (8th Cir. 1987). The motion should be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957) (as quoted in *Valiant-Bey*, 829 F.2d at 1443); *accord, Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Because immunity is an affirmative defense, it will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint. *See Weaver v. Clarke*, 45 F.3d 1253 (8th Cir. 1995) (discussing qualified immunity and citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980));

---

[5] Plaintiff is proceeding pro se in this matter and, accordingly, his complaint will be liberally construed. *See Valiant-Bey v. Morris*, 829 F.2d 1441, 1443 (8th Cir. 1987); *Holloway v. Lockhart*, 792 F.2d 760, 761-62 (8th Cir. 1986).

*Burlison v. United States*, 627 F.2d 119, 122 (8th Cir. 1980), *cert. denied*, 450 U.S. 1030 (1981).

## FACTS[6]

After pleading guilty to bank fraud, in violation of 18 U.S.C. § 1344, Plaintiff was sentenced, in January, 1997, by the Honorable Anna Diggs-Taylor of the United States District Court for the Eastern District of Michigan to 24 months custody within the Bureau of Prisons, to be followed by three years of supervised release. (Pl.'s complaint,¶ 6; Def.'s Mem., at 2). Special conditions of his supervised release included the payment of restitution, no use of credit cards or lines of credit, and participation in a substance abuse program. (Def.'s Mem., at 2). On May 20, 1998, Plaintiff pled guilty to willfully making a threat, in violation of 18 U.S.C. § 844(e), and was subsequently sentenced by the Honorable Nancy G. Edmunds of the United States District Court for the Eastern District of Michigan to 12 months custody within the Bureau of Prisons, to be followed by three years of supervised release. (Pl.'s complaint,¶ 7; Def.'s Mem., at 2). Participation in both a substance abuse program and mental health program were imposed as special conditions of release for this second

[6] The material facts relevant to this motion have been drawn from Plaintiff's complaint and are identified accordingly. Additional procedural facts are included to provide context for the Court's subsequent discussion.

conviction. (Def.'s Mem., at 3). Although the terms of imprisonment were ordered to run consecutively, the terms of supervised release were to run concurrently. (Pl.'s complaint,¶ 8).

On January 4, 1999, Plaintiff was released from the custody of the Bureau of Prisons and began his term of supervised release in the District of Minnesota, (Pl.'s complaint,¶ 9; Def.'s Mem., at 3). On May 13, 1999, jurisdiction was transferred from the Eastern District of Michigan to the District of Minnesota. (Pl.'s complaint,¶ 9, n.1; Def.'s Mem., at 3).

At some point after moving to the District of Minnesota, Plaintiff allegedly began stealing checks from another tenant at Plaintiff's place of residence and on at least one occasion left Minnesota without permission. (Def.'s Mem., at 3). On May 20, 1999, U.S. Probation Officer Dennis E. Bresnahan petitioned the District Court of Minnesota to modify Plaintiff's conditions of supervised release to include a 90-day term of confinement in a community corrections facility. (Def.'s mem., at 3). Plaintiff was advised by Officer Bresnahan of the proposed modification and voluntarily waived his statutory right, under Federal Rule of Criminal Procedure 32(c)(1), to a hearing and assistance of counsel in connection with this matter. (Def.'s mem., at 3; *see* Def's exh. C: "Hearing Waiver," dated 5/20/99). Defendant, a Senior United States Magistrate Judge,

granted the petition as requested, and issued an Order directing that Plaintiff be confined at the Volunteers of America Community Residential Center ("VOA") in Minneapolis for a period of 90 days. (Pl.'s complaint,¶ 10). On July 5, 1999, Plaintiff failed to return to the VOA after signing out for work release. (Pl.'s complaint,¶ 11 and n.2; Def.'s Mem., at 3). An arrest warrant was issued, and Plaintiff was apprehended on August 21, 1999. (Def.'s Mem., at 3).

On October 8, 1999, the Honorable James M. Rosenbaum, United States District Court Judge for the District of Minnesota, ordered Plaintiff to serve an additional term of imprisonment of ten months for his violation of the modified condition of supervised release. (Def.'s Mem., at 4; *see* D. Minn. Amended Order, No. 99-CR-147/99-CR-146, dated 10/8/99). On November 19, 1999, Plaintiff filed a motion pursuant to 28 U.S.C. § 2255, to vacate, set aside, and correct his sentence, arguing that Judge Rosenbaum lacked jurisdiction when he imposed the additional ten-month sentence because it was premised on an erroneous ruling by Defendant Cudd. (Def.'s Mem., at 4; *see* Pl.'s Motion in D. Minn., No. 99-CR-147/99-CR-146, dated 11/19/99). Specifically, Plaintiff argued that Defendant lacked statutory authority to modify supervised release conditions originally imposed by Judges Taylor and Edmunds of the Eastern District of Michigan, and order, as part of that modification, that Plaintiff reside in a

community corrections facility. (*Id.*). The United States agreed that the motion should be granted, stating that 18 U.S.C. § 3401(h) does not give magistrate judges the authority to modify orders of Article III judges. (Def.'s Mem., at 4; Govt's Response to Petitioner's Motion, in D. Minn., No. CV 99-1871/99-CR-146/99-CR-147, dated 1/13/00).

On January 14, 2000, Judge Rosenbaum entered an Order granting Plaintiff relief under section 2255 on the grounds raised in his motion: that Defendant Cudd lacked jurisdiction to modify the release conditions, and thus the District Court lacked jurisdiction to impose an additional sentence based on violation of those modified terms. (Pl.'s complaint,¶ 12; D. Minn. Order, No. CV 99-1871/99-CR-146/99-CR-147). The supervised release violation and warrant for Plaintiff's release were dismissed, and Plaintiff was ordered to be released from custody pursuant to 18 U.S.C. § 3624(d). (*Id.*). On March 14, 2000, Plaintiff filed this complaint against Defendant, to which Defendant asserts the affirmative defense of absolute immunity.

<u>Discussion</u>

A judge is generally immune from suit for money damages. *Mireles v. Waco*, 502 U.S. 9 (1991); *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1995); *Birch v. Mazander*, 678 F.2d 754, 755 (8th Cir. 1982). Magistrate

judges are judicial officers, and are thus entitled to absolute immunity under the same conditions as are judges. *See Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) (cited in *Timmerman v. Brown*, 528 F.2d 811, 813-14 (4th Cir. 1975), for proposition that absolute immunity extends to officials performing discretionary acts of a judicial nature); *accord, Boyer v. County of Washington*, 971 F.2d 100, 102 (8th Cir. 1992) (citing *Davis v. McAteer*, 431 F.2d 81, 82 (8th Cir. 1970), and applying absolute immunity analysis to court clerks "when they perform tasks that are an integral part of the judicial process"). Immunity is not lost when a judge's action is in error or was in excess of his authority. *See Stump v. Sparkman*, 435 U.S. 349, 359, *reh'g denied*, 436 U.S. 951 (1978); *Liles v. Reagan*, 804 F.2d 493, 495 (8th Cir. 1986). Rather, immunity will be lost in only two circumstances: (1) when the judge acts in a non-judicial capacity in that the acts complained of are not judicial acts, or (2) when the judge acts in the "complete absence of all jurisdiction." *Stump*, 435 U.S. at 359; *Duty*, 42 F.3d at 462.

"[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362 (as quoted in *Mireles*, 502 U.S. at 12); *Liles*,

804 F.2d at 495. Plaintiff argues that because magistrate judges are not authorized to modify supervised release conditions imposed by Article III judges, Defendant's act in so doing was not a function normally performed by a magistrate judge and thus was not a judicial act for immunity purposes. However, as the Supreme Court has instructed, it is "the nature of the function performed, not the identity of the actor who performed it, that inform[s the] immunity analysis." *Forrester v. White*, 484 U.S. 219, 229 (1988); *see also Mireles*, 502 U.S. at 12 ("[I]f only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'nonjudicial' act, because an improper or erroneous act cannot be said to be normally performed by a judge."). The relevant inquiry is the "nature" and "function" of the act, not the "act itself." *See Mireles*, 502 U.S. at 13 (citing *Stump*, 435 U.S. at 362). Clearly, reviewing and modifying supervised release conditions are functions normally performed by a judge, and thus are judicial acts for immunity purposes. *Compare Birch*, 678 F.2d at 756 (accepting guilty plea even though neither municipal judge nor attorney to whom judge assigned case had direct contact with accused is judicial act); and *White v. Bloom*, 621 F.2d 276, 280 (8th Cir. 1980) (permitting jury to be impaneled without presence of defendant held a judicial act); *with Gregory v. Thompson*, 500 F.2d 59, 64 (9th

Cir. 1974) (assault not a judicial act).

Having determined that Defendant acted in his judicial capacity, the Court will now turn to the second part of the immunity inquiry: whether Defendant's actions were taken in the complete absence of all jurisdiction. Plaintiff argues that Judge Rosenbaum answered this question in the affirmative when he granted Plaintiff relief under section 2255 on the grounds that Defendant acted outside the boundaries of his statutory authority under 18 U.S.C. § 3401. That section contemplates two scenarios in which a United States Magistrate Judge could review and modify conditions of supervised release. Subsection "h" provides that a "magistrate judge shall have power to modify . . . supervised release of any person sentenced to a term of supervised release by a magistrate judge." 18 U.S.C. § 3401(h). Subsection "i" authorizes magistrate judges, when designated by a district judge, to conduct hearings regarding supervised release: "A district judge may designate a magistrate judge to conduct hearings to modify, revoke, or terminate supervised release, including evidentiary hearings, and to submit to the judge proposed findings of fact and recommendations for such modification, revocation or termination by the judge . . . ." 18 U.S.C. § 3401(i).[7] Plaintiff argues that because Defendant's acts fall within neither of

---

[7] Rule 72.1(e)(6) of the Local Rules for the United States District Court for the District of Minnesota authorizes Magistrate Judges to "[c]onduct necessary

these provisions, he was acting in the clear absence of all jurisdiction.

Plaintiff's argument, while not inherently unreasonable, is not supported by the Supreme Court's immunity jurisprudence or the case law of this and other circuits. In *Stump v. Sparkman*, the Supreme Court reiterated that the jurisdictional inquiry for immunity purposes is not identical to that applied in determining traditional subject matter jurisdiction: "Because 'some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, the scope of the judge's jurisdiction' must be construed broadly where the issue is immunity of the judge." 435 U.S. at 356 (quoting *Bradley v. Fisher*, 13 Wall. 335, 352 (1872)). Thus, lack of jurisdiction does not in itself necessarily deprive a judge of immunity. Only where the judge has acted in the "clear absence of all jurisdiction" will he be subject to liability; an act in error or in excess of jurisdiction is not enough. *See Stump*, 432 U.S. at 356-57.

A distinction therefore exists between acts performed in excess of jurisdiction and those done in the clear absence of all jurisdiction. *See Duty*, 42 F.3d at 462. A "judge acts in excess of jurisdiction if the act complained of is

---

proceedings leading to the potential revocation of probation." Thus, while Defendant lacked authority under either section 3401(h) or (i) to issue an order modifying Plaintiff's supervised release terms, he had been "designated" by a district judge to proceed under 3401(i) to the extent permitted in that subsection.

within his general power of jurisdiction but is not authorized because of certain circumstances." *Billingsley v. Kyser*, 691 F.2d 388, 389 (8th Cir. 1982) (*per curiam*) (as quoted in *Duty*, 42 F.3d at 462). In contrast, there is a clear absence of jurisdiction where "there is clearly no jurisdiction over the subject-matter [so that] any authority exercised is a usurped authority . . . ." *Bradley*, 13 Wall. at 351-52 (as quoted in *Stump*, 435 U.S. at 356). And while the line between the two categories may, at first, appear difficult to draw, a review of relevant case law demonstrates that Defendant's actions clearly fall within the former.

The Supreme Court first illustrated the distinction in an 1872 case, *Bradley v. Fisher*:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Bradley,* 13 Wall. at 352 (as quoted in *Stump*, 435 U.S. at 1105 n.7); *accord, Duty*, 42 F.3d at 462-63 ("There is a clear absence of jurisdiction when a court of limited jurisdiction attempts to adjudicate a case outside of its jurisdiction, such as when a probate court conducts a criminal trial.") (emphasis added).

Plaintiff argues that under *Bradley*, Defendant is not entitled to immunity:

Defendant was granted limited jurisdictional authority under 18 U.S.C. § 3401, and thus his actions outside that limited jurisdiction – modifying Plaintiff's supervised release conditions -- were done in the clear absence of all jurisdiction. The *Bradley* example, however, must be read in conjunction with the rationale underlying judicial immunity and the Supreme Court's repeated admonition that rarely will jurisdictional questions turn on nice and obvious distinctions. The *Bradley* Court recognized "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley*, 13 Wall. at 355 (as quoted in *Liles*, 804 F,2d at 496); *see also Stump*, 435 U.S. 355 ("[S]ome of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction . . . ."). Because jurisdictional, as well as nonjurisdictional, issues are frequently subject to debate, judges are entitled to decide such issues without fear of reprisals in the event they exceed their authority. *See id.* at 363 ("Despite the unfairness to litigants that sometimes results, the doctrine of judicial immunity is thought to be in the best interests of the proper administration of justice.") (internal quotations omitted). These concerns are equally relevant whether the

actor in question exercises general or more limited jurisdictional authority. *See, e.g., Boyer v. County of Washington*, 971 F.2d 100 (8th Cir. 1992) (applying two-pronged immunity inquiry to county court clerk); *Tanner v. Heise*, 879 F.2d 572 (9th Cir. 1989) (state magistrate); and *Pagano v. Hadley*, 535 F. Supp. 92 (D. Del. 1982) (justice of peace). Thus, only where the distinction is as markedly clear as that illustrated in *Bradley* will the judge forfeit immunity. *See, e.g, Duty*, 42 F.3d at 462-63 ("There is a clear absence of jurisdiction when a court of limited jurisdiction attempts to adjudicate a case outside of its jurisdiction, *such as when a probate court conducts a criminal trial*.") (emphasis added).

The Eighth Circuit has consistently rejected a narrow construction of judicial immunity. In *Duty v. City of Springdale, Arkansas*, 42 F.3d 460 (8th Cir. 1995), the plaintiff, following a bench trial before Arkansas Municipal Judge Ludgwig ("Ludwig"), was convicted of speeding and driving with a suspended driver's licence. *See id.* at 461. Under Arkansas law, the plaintiff was entitled to, and was granted, a trial *de novo* in the circuit court. *See id.* After he was again convicted and sentenced to pay fines and court costs, he timely appealed to the Arkansas Court of Appeals. *See id.* While that appeal was pending, Ludwig issued a warrant for the plaintiff's arrest for failing to pay the fines and court costs imposed by the circuit court. *See id.* Thereafter, the plaintiff brought a

federal action for damages, alleging *inter alia* that Ludwig was without jurisdiction to issue the arrest warrant during the pendency of the plaintiff's appeal. *See id.* Ludwig moved for summary judgment based on absolute judicial immunity. *See id.* at 462. The district court rejected Ludwig's immunity argument, finding that he acted in the clear absence of jurisdiction because when he issued the arrest warrant, "there was no case or judgment before the Municipal Court." *Id.*

The Court of Appeals for the Eighth Circuit reversed the district court, holding that, "[e]ven accepting the contention that a municipal judge lacks authority to enforce a circuit court's judgment, . . . Ludwig [was] entitled to absolute immunity." *Id.* at 463. Significant to the Court's holding was the fact that Arkansas law authorized municipal judges to issue arrest warrants in some circumstances, *see id.,* and thus "it [was] clear that . . . Ludwig acted, at most, in excess of jurisdiction and not in the clear absence of jurisdiction." *Id.* (citing *Billingsley*, 691 F.2d at 389-90 (Missouri circuit judge, who lacked jurisdiction to amend inmate's sentence during pendency of appeal, acted only in excess of jurisdiction "because he was empowered to rule on criminal matters," including, in other circumstances, amendment of sentences); and *King v. Myers*, 973 F.2d 354, 357-59 (4th Cir. 1992) (finding relevant that "alleged criminal conduct in the

context of a domestic relations dispute is an area over which magistrates have jurisdiction," and thus state magistrate entitled to immunity even though "authority to issue process of arrest may well have been overstepped, perhaps even widely")), *See also Boyer*, 971 F.2d at 102 (reversing district court to hold that court clerk who issued arrest warrant without statutory authority did not act in complete absence of all jurisdiction since clerk was authorized to *sign* warrants once they had been issued); *Liles* , 804 F.2d at 495 (where state court judge told plaintiffs that he would not recuse himself from state habeas corpus action unless plaintiffs dismissed federal habeas action, such interference in federal proceedings was merely in excess of jurisdiction since judge had the "power to hear issues and to make the decision he did in the *state* habeas corpus proceeding").

Viewing the facts of this case in light of the foregoing precedent, it is clear that Defendant was acting in excess of his jurisdiction rather than in the clear absence of it. As a United States Magistrate Judge, Defendant is authorized by statute and local rule to conduct and rule on a wide variety of criminal matters.[8]

---

[8] Rule 72.1 of the Local Rules for the United States District Court for the District of Minnesota governs Magistrate Judges, and provides in relevant part:

> 72.1(a): "Each United States Magistrate Judge appointed by this Court is authorized to perform the duties prescribed by 28 U.S.C. § 636(a) and may . . . [under subsection] (3) [t]ry persons accused of

And like the municipal judge in *Duty*, Defendant was authorized, under certain circumstances, to take the actions challenged in this proceeding. As discussed, 18 U.S.C. § 3401 clearly contemplates that magistrate judges will play a role in the supervised release scheme, and will, in some situations, review and modify release terms. *See* 18 U.S.C. § 3401(h) and (i); *see also* Rule 72.1(e)(6) of the Local Rules for the United States District Court for the District of Minnesota (authorizing U.S. Magistrate Judges to "[c]onduct necessary proceedings leading to the potential revocation of probation"). That Defendant exceeded his authority in modifying terms originally imposed by an Article III judge rather than submitting findings and recommendations as required by statute is not the type of error that warrants loss of immunity.

Other courts addressing judicial immunity have come to similar conclusions. In *Sherwood v. Brennan*, 1998 WL 196476 (N.D. Cal. 1998), *aff'd*,

---

minor offenses, committed within this district in accordance with 18 U.S.C. § 3401, order a presentence investigation report on such person who is convicted or pleads guilty or nolo contendere, and sentence such persons."

* * *

72.1(e)(6): a Magistrate Judge is authorized to "[c]onduct necessary proceedings leading to the potential revocation of probation.

* * *

72.1(e)(16): a Magistrate Judge is also authorized to "[p]erform any additional duty not inconsistent with the Constitution and laws of the United States.

198 F.3d 255 (9[th] Cir. 1999), the district court held that a federal magistrate judge merely exceeded authority, and thus did not lose immunity, when she dismissed the plaintiff's claims even though she only had jurisdiction to enter findings and recommendations. In *Hicks v. Blythe*, 105 F.3d 669, *2-3 (10[th] Cir. 1997) the Tenth Circuit held that an Oklahoma magistrate judge, with limited statutory powers and duties, acted only in excess of authority when he increased the plaintiff's bond after entry of a bindover order, despite the fact that plaintiff secured a writ of habeas corpus on grounds that the magistrate had no jurisdiction to increase the bond. *See also, e.g., King v. Meyers*, 973 F.2d at 357 (finding that state magistrate did not act in clear absence of all jurisdiction even where "the boundaries of a magistrate's authority to issue process of arrest may well have been overstepped, perhaps even widely"); *Pagano v. Hadley*, 535 F. Supp. 92, 96-97 (D. Del. 1982) (justice of peace, with limited jurisdiction, lacked authority to commit plaintiff to mental hospital but did not act in clear absence of all authority since he could, in some circumstances, "deprive citizens of their freedom"). The Court has been unable to find, nor has Plaintiff directed it to, a single case which would support Plaintiff's position, which is, essentially, that "lack of jurisdiction" is equivalent to "the clear absence of all jurisdiction."

In conclusion, the Court holds that the factual allegations in the complaint,

construed in the light most favorable to Plaintiff, do not support a charge that Defendant acted in the clear absence of jurisdiction. While Defendant may have acted in excess of his jurisdictional authority, he is nevertheless entitled to absolute immunity and the motion to dismiss shall be granted.

## ORDER

Accordingly, it is ORDERED:

Defendant's motion to dismiss (doc. no. 10) is GRANTED.

Done and so ordered this 12th day of December, 2000.

Michael J. Melloy
United States District Court
Sitting by Designation

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: DEC 14 2000

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995